**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

FAYE MORRISON, et al., individually  )
and on behalf of similarly situated  )
individuals,                          )
                                      )
            Plaintiffs,               )
                                      )
vs.                                   )   CIVIL NO. 08-565-GPM
                                      )
YTB INTERNATIONAL, INC., et al.,      )   Consolidated with:
                                      )   CIVIL NO. 08-579-GPM
            Defendants.               )

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

### I. INTRODUCTION

This matter is before the Court on a motion to dismiss for failure to state a claim upon which

relief can be granted (Doc. 121). Plaintiffs Faye Morrison, John Stull, Kwame Thompson,

Jeffrey Hartman, Polly Hartman, JPH Development, Inc. ("JPH"), Grace Perry, and Courtney Speed

assert claims for deceptive and unfair trade practices against Defendants YTB International, Inc.

("YTB International"), YourTravelBiz.com, Inc. ("YourTravelBiz"), YTB Travel Network, Inc.

("YTBTN"), and YTB Travel Network of Illinois, Inc. ("YTBTNI"). YTB International,

YourTravelBiz, YTBTN, and YTBTNI are affiliated corporations based in Illinois that are engaged

in the business of marketing online travel agencies ("OTAs") to persons interested in setting up

home travel businesses. Defendants J. Lloyd Tomer, J. Scott Tomer, and Robert Van Patten are

corporate officers of YTB International. Defendant J. Kim Sorensen is a corporate officer of

YTB International and YTBTN; additionally, Sorensen is a corporate officer of

Defendant CCMP, Inc. ("CCMP").   Defendant Andrew Cauthen is a corporate officer of YourTravelBiz.[1] Defendants Meridian Land Company ("Meridian"), Winfield Development, LLC ("Winfield LLC"), CCMP, Timothy Kaiser, M.D., and Clay O. Winfield are alleged co-conspirators of the YTB Defendants.[2]  Federal subject matter jurisdiction is alleged on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).

The Court has discussed the nature of the claims for relief asserted by Morrison, Stull, Thompson, Jeffrey Hartman, Polly Hartman, JPH, Perry, and Speed in earlier orders in this case and does not wish to repeat that recitation at great length here.  As already has been noted, this case concerns sales of OTAs, which the YTB Defendants market to Referring Travel Agents ("RTAs") through a network of Independent Marketing Representatives ("IMRs").  An RTA pays the YTB Defendants an initial fee of approximately $450 for an OTA, followed by payments of about $50 per month thereafter.  In turn, the YTB Defendants pay a marketing commission to each

---

1.    Hereinafter in this Order the Court will refer to YTB International, YourTravelBiz, YTBTN, YTBTNI, J. Lloyd Tomer, J. Scott Tomer, Sorensen, Van Patten, and Cauthen collectively as "the YTB Defendants" whenever possible.

2.    Hereinafter in this Order the Court will refer to Meridian, Winfield LLC, CCMP, Kaiser, and Winfield collectively as "the Conspiracy Defendants" whenever possible.  It appears from the allegations of the operative complaint in this case that Kaiser and Winfield are corporate officers of YTB International.  However, Plaintiffs' theory of liability against Kaiser and Winfield is premised upon Kaiser's position as a corporate officer of Meridian and Winfield's position as a corporate officer of Winfield LLC rather than upon the positions that Kaiser and Winfield hold as officers of YTB International.  Thus, when the Court refers to "the YTB Defendants," this term should not be understood to include Kaiser and Winfield.  Similarly, although as already has been noted Sorensen is a corporate officer of CCMP, when the Court refers to "the Conspiracy Defendants," this term should not be understood to include Sorensen.

IMR that refers an RTA to them to buy an OTA both for the RTA and for any new agents that the RTA is able to recruit.  The YTB Defendants also provide incentives for IMRS to become RTAs by, for example, reimbursing RTA fees to IMRs who sell a certain number of OTAs.  Thus, an IMR/RTA who referred to the YTB Defendants three persons that purchased OTAs would qualify for reimbursement of his or her initial RTA fee.  Likewise, an IMR/RTA who sold six OTAs would qualify for reimbursement of his or her monthly RTA fee for every month during which the sold OTAs remained active.  Also, an IMR receives a commissions each time he or she purchases an OTA.  The object of the YTB Defendants' business model, in sum, is to induce IMRs through commissions and rebates to become RTAs and to sign up new RTAs, who then are offered the same inducements to sign up new RTAs in their turn.  Plaintiffs allege that the YTB Defendants have garnered about a $500 million in revenues marketing OTAs, netting $122 million in 2008 alone, an amount equal to 75% of their net revenue.

The operative complaint in this case asserts two counts for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*., and a count for civil conspiracy.  Count I of the complaint alleges that the YTB Defendants have violated 815 ILCS 505/2A(2) by operating an illegal pyramid sales scheme as defined by 815 ILCS 505/1(g).[3]  As discussed above, according to the complaint IMRs pay money for the

---

3.  The ICFA provides, in relevant part, that "[i]t is an unlawful practice within the meaning of this act for any person, by himself or through others, to sell, offer to sell, or attempt to sell the right to participate in a pyramid sales scheme."  815 ILCS 505/2A(2).  The statute defines a pyramid sales scheme as:

> [A]ny plan or operation whereby a person in exchange for money or other thing of value acquires the opportunity to receive a benefit or thing of value, which is primarily based upon the inducement of additional persons by himself or others, regardless of number to participate in the same plan or operation and is not

opportunity to become RTAs in order to garner commissions and rebates by inducing others to become RTAs.  Count II of the complaint alleges that the YTB Defendants have violated 815 ILCS 505/2A(1), by engaging in an illegal chain referral sales technique.[4]  Count III of the complaint alleges that the Conspiracy Defendants have engaged in a civil conspiracy to violate the ICFA.  Plaintiffs, all of whom are onetime RTAs and IMRs, seek $100 million in actual and punitive damages as well as injunctive relief on behalf of themselves and a proposed class defined as "All IMRs who paid non-reimbursed RTA fees to YTB International, Inc. and/or any of its subsidiaries."  Doc. 81 at 18 ¶ 59.

The YTB Defendants and the Conspiracy Defendants in turn have moved to dismiss Plaintiffs' case for failure to state a claim upon which relief can be granted, asserting the following grounds:  Morrison, Thompson, Jeffrey Hartman, Polly Hartman, JPH, Perry, Speed, and the

---

primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers.

815 ILCS 505/1(g).  *See also People ex rel. Hartigan v. Dynasty Sys. Corp.*, 471 N.E.2d 236, 240 (Ill. App. Ct. 1984).

4.   The ICFA prohibits "chain referral sales technique[s]," stating, in relevant part:

The use or employment of any chain referral sales technique, plan, arrangement or agreement whereby the buyer is induced to purchase merchandise upon the seller's promise or representation that if buyer will furnish seller names of other prospective buyers or like or identical merchandise that seller will contact the named prospective buyers and buyer will receive a reduction in the purchase price by means of a cash rebate, commission, credit toward balance due or any other consideration, which rebate, commission, credit or other consideration is contingent upon seller's ability to sell like or identical merchandise to the named prospective buyers, is declared to be an unlawful practice within the meaning of this Act.

815 ILCS 505/2A(1).  *See also Scentura Creations, Inc. v. Long*, 756 N.E.2d 451, 457-58 (Ill. App. Ct. 2001).

members of the proposed class that are not residents of Illinois lack standing to sue under the ICFA; Stull lacks standing to sue under the ICFA because he is not a consumer within the meaning of the statute; and the claim for civil conspiracy asserted in Count III of the complaint is inadequately pleaded and is barred by the common-law doctrine of intracorporate immunity. The motion to dismiss has been fully briefed, and the Court rules as follows.

## II. A<small>NALYSIS</small>

### A.     Legal Standard

As an initial matter the Court notes the legal standard under which the instant motion to dismiss must be evaluated. In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded allegations in a plaintiff's complaint as true. *See* Fed. R. Civ. P. 12(b)(6); *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002); *S.C. Johnson & Son, Inc. v. Buske*, Civil No. 09-286-GPM, 2009 WL 3010833, at *8 (S.D. Ill. Sept. 17, 2009). The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Heinze v. Southern Illinois Healthcare*, Civil No. 08-672-GPM, 2010 WL 276722, at *2 (S.D. Ill. Jan. 19, 2010); *Brown v. SBC Commc'ns, Inc.*, No. 05-cv-777-JPG, 2007 WL 684133, at *2 (S.D. Ill. Mar. 1, 2007). A complaint should not be dismissed under Rule 12(b)(6) unless it either fails to provide adequate notice – as has been required consistently under Rule 8 of the Federal Rules of Civil Procedure – or does not contain "enough facts to state a claim to relief that is plausible on its face," that is, the claim has not been "nudged . . . across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "A complaint need not

'allege all, or *any*, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)) (emphasis in original).   Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the . . . grounds . . . of his . . . entitle[ment] to relief . . . requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do[.]"   *James v. Illinois Sexually Dangerous Persons Act*, Civil No. 09-40-GPM, 2009 WL 2567910, at *2 (S.D. Ill. Aug. 19, 2009) (quoting *Twombly*, 550 U.S. at 555).[5]

**B.     Standing of Non-Residents of Illinois to Sue under the ICFA**

The first issue for resolution at this juncture is whether non-residents of Illinois have standing to bring suit against the YTB Defendants and the Conspiracy Defendants under the ICFA. Of the named Plaintiffs in this action, only Stull is a resident of Illinois:   Morrison, Speed, and Jeffrey and Polly Hartman are Missouri citizens, Thompson is a Georgia citizen, and Perry is a Utah citizen.   According to the allegations of the operative complaint in this case and the online records of corporations maintained by the Missouri Secretary of State at https://www.sos.mo.gov/BusinessEntity/soskb/csearch.asp, which the Court can judicially notice, *see Holmes v. Back Doctors, Ltd.*, Civil No. 09-540-GPM, 2009 WL 3425961, at *1 n.1 (S.D. Ill. Oct. 21, 2009), JPH is a corporation incorporated under Missouri law with its principal

_____

5.     It should be pointed out as well that although, as already has been discussed, Morrison, Stull, Thompson, Jeffrey Hartman, Polly Hartman, JPH, Perry, and Speed seek to represent a nationwide class, at this juncture the Court's concern is solely with whether, as individuals, the named Plaintiffs in this case have stated a claim upon which relief can be granted.   *See Whitwell v. Wal-Mart Stores, Inc.*, Civil No. 09-513-GPM, 2009 WL 4894575, at *2 n.2 (S.D. Ill. Dec. 11, 2009).

place of business in Missouri, and thus is a Missouri citizen.  In an earlier order in this case, the Court dismissed all claims in this case brought under the ICFA by non-Illinois residents for failure to state a claim upon which relief can be granted.  *See Morrison v. YTB Int'l, Inc.*, 641 F. Supp. 2d 768, 775-76 & n.5, 781-82 (S.D. Ill. 2009).  Plaintiffs now challenge that ruling, which is, of course, the law of the case.  *See Morrison v. YTB Int'l, Inc.*, Civil Nos. 08-565-GPM, 08-579-GPM, 2009 WL 2244724, at *2 (S.D. Ill. July 20, 2009).  Having considered the matter carefully, the Court adheres to its earlier determination that non-residents of Illinois cannot maintain claims under the ICFA in this case.

The ICFA authorizes a private right of action, providing, in relevant part:  "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person."  815 ILCS 505/10a(a).  To establish a prima facie case of deceptive or unfair trade practices under the ICFA, a plaintiff must prove that a defendant intentionally engaged in a deceptive or unfair practice in the course of conduct involving trade or commerce, and that this practice proximately caused harm to the plaintiff.  *See Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 779 (N.D. Ill. 2008) (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)).  The statute defines "trade or commerce" as follows:

> The terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

815 ILCS 505/1(f).  In this instance, of course, the conduct complained of clearly involves trade or commerce directly or indirectly affecting the people of Illinois so as to implicate Illinois's "interest

in protecting its consumers." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 851 (Ill. 2005) (quoting *Ivanhoe Fin., Inc. v. Mortgage Essentials, Inc.*, No. 03 C 6887, 2004 WL 856591, at *2 (N.D. Ill. Apr. 21, 2004)).  What is in dispute here is whether non-residents of Illinois like Morrison, Thompson, Jeffrey Hartman, Polly Hartman, JPH, Perry, and Speed, as well as the members of the proposed class who reside outside of Illinois, can maintain claims under the ICFA.  As the Supreme Court of Illinois explained in *Avery*, the ICFA does not apply to "fraudulent transactions which take place outside Illinois," but a non-resident of Illinois "may pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id*. at 853-54.  Factors relevant to determining whether a transaction occurred primarily and substantially in Illinois so as to permit extraterritorial application of the ICFA include:  (1) a plaintiff's residence; (2) where the unfair or deceptive trade practice occurred; (3) where the damage to a plaintiff occurred; and (4) whether a plaintiff communicated with a defendant or the defendant's agents in Illinois. *See id*. at 854-55.

Significantly, the *Avery* court rejected the notion that an allegation that a defendant was headquartered in Illinois or that its deceptive practices flowed from Illinois were sufficient to assert a claim.  "The appellate court's conclusion that a scheme to defraud was 'disseminated' from State Farm's headquarters is insufficient . . . . [W]here the only connection with Illinois is the headquarters of the defendant or the fact that a scheme 'emanated' from Illinois, the [ICFA] 'does not apply to the claims of the non-Illinois plaintiffs[.]"  835 N.E.2d at 855 (quoting *Rohlfing v. Manor Care, Inc*., 172 F.R.D. 330, 340 & n.10 (N.D. Ill. 1997)).  In the Court's previous order dismissing the ICFA claims of Plaintiffs and putative class members who are not residents of

Illinois, the Court examined the factors identified as relevant in *Avery* and found that they did not

weigh in favor of applying the ICFA extraterritorially on behalf of non-residents of Illinois:

> In this case, the only possible basis for allowing Plaintiffs Morrison, Thompson, the Hartmans, JPH, Perry, and Speed to assert claims under the ICFA is that Defendants YTB International, YourTravelBiz, YTBTN, and YTBTNI are headquartered in Illinois and the business practices complained of in the Consolidated Complaint supposedly emanated from Illinois. All of the named Plaintiffs save Stull reside, as noted, outside Illinois, any representations that were made to the non-Illinois Plaintiffs by Defendants doubtless were received outside Illinois, and the damages of those Plaintiffs were incurred outside Illinois.

*Morrison*, 641 F. Supp. 2d at 776. At this juncture, Plaintiffs do not dispute that the *Avery* factors

do not favor extraterritorial application of the ICFA. Instead they argue that a number of additional

facts pleaded in their operative complaint show that extraterritorial application of the ICFA is

appropriate in this case. The Court does not agree, as the additional facts pleaded by Plaintiffs

merely establish what was already clear the last time the Court addressed this question, namely, that

the YTB Defendants are headquartered in Illinois, a fact that, as discussed, is not sufficient to permit

the Court to apply the ICFA extraterritorially in this case.

The Court turns then to the facts alleged by Plaintiffs in support of extraterritorial application

of the ICFA. As noted, those facts suffice mainly to show that the YTB Defendants are based in

Illinois and that the trade practices challenged in this case emanated from Illinois. For example,

Plaintiffs allege: the YTB Defendants' corporate offices were located in Illinois, and all policies

concerning IMRs and RTAs were created in Illinois; communications with new RTAs came from

the YTB Defendants' Illinois headquarters; RTA and IMR identification credentials were issued

from the YTB Defendants' Illinois headquarters; web hosting for OTAs was supplied

by the YTB Defendants in Illinois; requests for RTA and IMR marketing materials were directed to

the YTB Defendants' Illinois headquarters; checks for commission payments and OTA referral sales commissions were drawn on an Illinois bank account and were mailed from Illinois; requests for refunds of RTA fees were made to the YTB Defendants' Illinois headquarters; RTAs were encouraged to contact the YTB Defendants' Illinois headquarters with questions and to use the address of the YTB Defendants' Illinois headquarters in conducting OTA business; decisions to terminate IMR and RTA relationships were made at the YTB Defendants' Illinois headquarters; the YTB Defendants recruited RTAs by hosting annual "Red Carpet Days" at the YTB Defendants' Illinois headquarters; some training sessions for IMRs and RTAs were conducted in Illinois, as were regional meetings where IMRs and RTAs could meet prospective OTA referrals; and the YTB Defendants held at least one shareholders meeting in Illinois.  Additionally, Plaintiffs assert that:  contracts between IMRs and RTAs, on the one hand, and the YTB Defendants, on the other hand, were drafted in Illinois; such contracts contained choice-of-law clauses providing that Illinois law would govern disputes arising from such contracts, as well as arbitration clauses providing for arbitration of disputes in Illinois; and the contracts became effective upon receipt of the contracts by the YTB Defendants in Illinois.  Finally, Plaintiffs aver that travel customers referred to the YTB Defendants via OTAs were customers of YTBNI and did business with the YTB Defendants in Illinois.  In the Court's view, the facts adduced by Plaintiffs do not support the extraterritorial application of the ICFA in this case.

The relationship between the Plaintiffs in this case who are not Illinois residents and the YTB Defendants did not arise in Illinois, nor was it centered in Illinois, and any damages the non-Illinois Plaintiffs have suffered certainly did not occur in Illinois.  To the extent Plaintiffs seem to suggest that Illinois law governs their claims as a matter of contract, the Court notes that

Plaintiffs' claims in this case sound in tort, not in contract and, in any event, the Court does not believe that the scope of the ICFA can be enlarged by a mere contractual agreement. *See Shaw v. Hyatt Int'l Corp.*, No. 05 C 5022, 2005 WL 3088438, at *3 (N.D. Ill. Nov. 15, 2005) (quoting *Avery*, 835 N.E.2d at 854) ("[T]he extraterritorial application of the ICFA is limited to deceptive trade practices occurring 'primarily and substantially within Illinois.'  The fact that Illinois law was selected to govern disputes arising out of Hyatt's website does nothing to further the contention that the allegedly deceptive practices occurred in Illinois."). Indeed, if Plaintiffs were attempting to assert rights under a contract, this would be fatal to any claim asserted by them under the ICFA, because "[a] breach of a promise, without more, is not actionable under the [ICFA]." *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 971 (N.D. Ill. 2008) (citing *Avery*, 835 N.E.2d at 844).

Having considered the totality of the circumstances here, the Court concludes that the "overwhelming majority of circumstances relating to the disputed transactions in this case . . . occurred outside of Illinois for the out-of-state plaintiffs," and therefore they "have no cognizable cause of action under the [ICFA]." *Avery*, 835 N.E.2d at 854. *See also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396-97 (7th Cir. 2009) (holding that a resident of Florida lacked standing under the ICFA to sue an insurer which had a home office in Illinois from which it issued insurance policies, because any deception of the non-resident plaintiff and any damages accrued as a result of the deception occurred in Florida); *Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E.2d 310, 315-16 (Ill. App. Ct. 2007) (plaintiffs who resided outside of Illinois and who allegedly were deceived outside Illinois and who thereby were damaged outside Illinois lacked standing to sue under the ICFA). Because the Court concludes that Morrison, Thompson, Jeffrey Hartman,

Polly Hartman, JPH, Perry, and Speed lack standing to sue under the ICFA, their claims in this case will be dismissed with prejudice.[6]

### C.      Stull's Standing as a Consumer under the ICFA

In the Court's earlier order dismissing the ICFA claims in this case for failure to state a claim upon which relief can be granted, the Court concluded that while Stull, as an Illinois resident, is entitled to invoke the protections of the ICFA, he is not a consumer within the meaning of the statute.  Under the ICFA, the Court said, "[t]he term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."  *Morrison*, 641 F. Supp. 2d at 776 (quoting 815 ILCS 505/1(e)).  The Court concluded that because Stull purchased goods and services from the YTB Defendants for use in a business, he is not a consumer.  *See id*. at 777.  However, the Court noted further, a non-consumer has standing to sue under the ICFA if the non-consumer alleges a "consumer nexus" between challenged trade practices and the market generally or consumer protections concerns.  *See id*.  Accordingly, the Court directed Stull to amend his complaint to allege the requisite consumer nexus.  *See id*. at 782.

"[W]hen both parties to [a] suit [under the ICFA] are commercial entities which are not consumers 'the test for standing is whether the alleged conduct invokes trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'"  *Stepan Co. v. Winter Panel Corp*., 948 F. Supp. 802, 805-06 (N.D. Ill. 1996) (quoting *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1368 (N.D. Ill. 1996)).  *See also Gelco Corp. v. Major*

---

6.    Additionally, the Court construes the proposed class in this case as being restricted to citizens of Illinois, a determination that, as will be discussed presently, has certain implications with regard to the Court's exercise of jurisdiction in this case under the CAFA.

*Chevrolet, Inc.*, No. 01 C 9719, 2002 WL 31427027, at *10 (N.D. Ill. Oct. 30, 2002); *Brody v.*

*Finch Univ. of Health Scis./The Chicago Med. Sch.*, 698 N.E.2d 257, 268-69 (Ill. App. Ct. 1998).

The reason for the consumer nexus requirement for standing under the ICFA is that, absent such a

requirement, "contract law would be subsumed by causes of action brought under the [ICFA]."

*Stepan Co.*, 948 F. Supp. at 806 (citing *Lake County Grading Co. of Libertyville v. Advance Mech.*

*Contractors, Inc.*, 654 N.E.2d 1109, 1115-16 (Ill. App. Ct. 1995)).  *See also Zankle v. Queen Anne*

*Landscaping*, 724 N.E.2d 988, 992-93 (Ill. App. Ct. 2000) ("[I]t is settled that the [ICFA] was not

intended to apply to every contract dispute or to supplement every breach of contract claim with a

redundant remedy.").

According to the allegations of the operative complaint in this case, the trade practices

challenged therein possess the requisite consumer nexus:

> [The] YTB Defendants marketed and sold products to the travel purchaser market
> generally.  As of 2007, YTB was considered the 26th largest travel agency in the
> United States, and their market share continued to grow.  YTB Defendants directed
> their operations at the travel purchaser market generally by marketing and selling
> their products and services, such as airline tickets and cruise packages, to the public
> at large.  Moreover, YTB Defendants' illegal pyramid scheme injured both their
> travel agency competitors as well as travel consumers.  YTB Defendants stole market
> share from brick-and-mortar travel agencies, putting many out of business.
> Moreover, by eliminating their competition, YTB Defendants increased the cost of
> travel for travel consumers at large.  As such, Defendants' illegal pyramid scheme
> was directed at the travel consumer market generally, effected [sic] the consumer
> market and otherwise implicated consumer protection concerns.

Doc. 81 at 17-18 ¶ 58.  These allegations, taken as true, establish that the conduct complained of in

this case "involves trade practices directed to the market generally or otherwise implicates consumer

protection concerns." *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996)

(collecting cases).  *See also Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868

(7th Cir. 1999) (a non-consumer has standing to sue under the ICFA for trade practices that harm, or have the potential to harm, a "multitude" of consumers).  Accordingly, the Court finds that Stull has alleged facts sufficient to establish his standing for purposes of the ICFA and therefore he may proceed with his ICFA claims.[7]

### D.    Civil Conspiracy

The Court turns next to Defendants' challenges to the civil conspiracy claim asserted in this case.  To state the basic relationships among the Conspiracy Defendants and between the Conspiracy Defendants and the YTB Defendants as they are set out in the operative complaint in this

---

7.    The Court notes in passing that Plaintiffs, in their brief in response to the instant motion to dismiss, continue to insist that, contrary to the Court's decision in its earlier order dismissing the ICFA claims in this case, they and other persons who purchased OTAs are consumers, rather than businesses, for purposes of the statute.  In support of this proposition, they cite to a number of decisions from courts outside this Circuit in suits against persons hawking fraudulent schemes to start home businesses, primarily enforcement actions brought by the Federal Trade Commission ("FTC").  Plaintiffs argue also that a pyramid scheme and a chain referral sales technique, because illegal, by definition are not businesses and that because the proposed class case in this case is drawn to exclude persons who actually turned a profit from their OTAs, Plaintiffs and the class should not be viewed as operating businesses.  The Court finds all of these arguments unpersuasive.  Obviously, in an action brought pursuant to the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq*., the standing of the FTC to sue is not at issue.  The lone case cited by Plaintiffs that is not an FTC enforcement action, *Hofstetter v. Fletcher*, 905 F.2d 897 (6th Cir. 1988), involves peculiar facts and is not pertinent here.  In *Hofstetter* the court found that the plaintiff's purchase of an insurance policy was a consumer transaction within the meaning of an Ohio consumer protection statute because the plaintiff bought the policy as part of a scheme to reduce her personal liability for income tax.  *See id*. at 905-06.  What this has to do with this case is unclear to the Court.  Finally, a business that is unlawful or unprofitable is not any the less a business:  unsuccessful traffickers in illegal narcotics pass through the Court's doors daily, by way of example.  Most importantly, the entire question of whether Plaintiffs are businesspeople or consumers is academic.  As the United States Court of Appeals for the Seventh Circuit has noted, the consumer nexus requirement for ICFA standing simply reflects a judicial understanding that, in order to bring suit under the statute, a businessperson needs to show that a particular trade practice is "likely to affect the market generally . . . and thus . . . likely to harm consumers in the colloquial sense of the ultimate buyers of the finished product[.]"  *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004).  Here that showing has been made and, correspondingly, Stull has standing to sue under the ICFA to precisely the same extent as if he were suing under the statute as a consumer.

case:  Meridian leased and sold real property to YTB International; Winfield LLC developed property that Meridian leased to YTB International; CCMP designed and manufactured marketing materials for the YTB Defendants; Timothy Kaiser is a corporate officer of Meridian; and Clay Winfield is a corporate officer of Meridian and Winfield LLC.  Under Illinois law, a civil conspiracy "consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means."  *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994).  *See also Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007); *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999).  "The function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's act."  *Sain v. Nagel*, 997 F. Supp. 1002, 1017 (N.D. Ill. 1998) (quoting *Adcock*, 645 N.E.2d at 894).  "Conspiracy is not an independent tort.  Where, . . . [a] plaintiff fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails."  *Thomas v. Fuerst*, 803 N.E.2d 619, 625-26 (Ill. App. Ct. 2004).  *See also Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989) (citing *Galinski v. Kessler*, 480 N.E.2d 1176, 1179 (Ill. App. Ct. 1985)).  In this instance the underlying claim for relief is, of course, the violations of the ICFA alleged in the complaint.  Under Illinois law, "[t]he elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act."  *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004).  *See also Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 240 (Ill. App. Ct. 2007).

The pertinent allegations of the operative complaint in this case regarding the alleged civil conspiracy state:

> . . . [A] number of different corporations and individuals conspired with YTB Defendants by taking actions that advanced the tortious and illegal pyramid scheme and chain sales referral technique, thereby making tens of millions of dollars in profits. Meridian Land Co., which is owned by YTB Directors Clay Winfield and Timothy Kaiser, M.D., advanced YTB Defendants' illegal objectives by contracting to provide them with property for office space while Winfield Development, LLC developed that property. CCMP, Inc., an Indiana corporation for which J. Kim Sorensen is the president, advanced YTB Defendants' objectives by providing them with marketing materials and a 130 ft. replica of the Statute of Liberty for YTB Defendants' 2008 convention in St. Louis, Missouri. These "Conspiracy Defendants" are liable under Illinois common law because they knowingly and voluntarily took these actions that advanced YTB Defendants' illegal objectives.

> \* \* \* \*

> YTB Defendants perpetrated a tortious and illegal pyramid scheme and a tortious and illegal chain sales referral technique. Conspiracy Defendants acted in concert with YTB Defendants by furthering their tortious and illegal objectives and actions.

> \* \* \* \*

> Conspiracy Defendants knowingly and voluntarily participated in a common scheme to unlawfully and tortiously perpetrate an illegal pyramid scheme and a chain sales referral technique.

> \* \* \* \*

> Conspiracy Defendants understood the general objectives of the tortious and illegal pyramid scheme and chain sales referral technique, accepted them and agreed, either explicitly or implicitly, to further those objectives.

Doc. 81 at 4 ¶ 5, 21-22 ¶¶ 78-80. These allegations, it seems to the Court, adequately assert that the Conspiracy Defendants knowingly combined with the YTB Defendants to accomplish an unlawful goal.

The operative complaint in this case alleges also that the Conspiracy Defendants performed

the following actions in furtherance of the conspiracy:

Conspiracy Defendants knowingly and voluntarily advanced and participated in YTB Defendants' illegal pyramid scheme and chain sales referral technique by performing the following non-exclusive list of actions:

a.   On July 1, 2005, YTB International, Inc. entered into a contract with lessor Meridian Land Co. to lease approximately 13,000 square feet of property at One Country Club Drive, Edwardsville, Illinois. This property was owned and controlled by Meridian Land Co.

b.   On November 1, 2005, YTB International, Inc. entered into a contract with lessor Meridian Land Co. to lease approximately 5,000 square feet at 600 Country Club View Drive, Edwardsville, Illinois.  This property was owned and controlled by Meridian Land Co.

c.    The combined rental cost of the two aforementioned properties amounts to $15,000 per month.  Combined rent expense for these two leases was $137,300 and $180,00 for the years ending December 31, 2007 and 2006 respectively.

d.   On July 27, 2007, YTB International, Inc. entered into a purchase contract to buy the aforementioned property at One Country Club View, Edwardsville, Illinois for $1,850,000, of which $480,500 was paid by the YTB International, Inc. in cash as of the signing of the real estate contract, and the remaining $1,369,500 of which constituted obligations of Meridian Land Co. were paid and/or assumed by the YTB International, Inc. at the closing, consisting of (i) $1,305,525 principal amount of aggregate indebtedness owed by Meridian Land Co. to a local bank that was assumed by the YTB Defendants, (ii) $57,791 of accrued property taxes owed by Meridian Land for the subject property for 2006 and for a pro-rata portion of 2007, and (iii) $6,184 of assorted closing costs of Meridian Land Co.

e.   In January, 2008, YTB International purchased the aforementioned property located at 600 Country Club View Drive, Edwardsville, Illinois from Meridian Land Co for $2,350,000 in cash.   YTB International, Inc. paid $500,000 out of the $2,350,000 purchase price as a deposit as of the execution of the purchase contract, and the remaining $1,850,000 is due at the closing of the acquisition of this property, which was scheduled to occur in, or prior to May, 2008.

f. In July, 2006, YTB International, Inc. borrowed $2.5 million from Meridian Bank in connection with its acquisition of the land and building which houses its corporate headquarters in Wood River, Illinois.

g.   During the year that ended December 31, 2007, YTB International, Inc. made aggregate payments of approximately $1,038,175 pursuant to the terms of the development contract for its corporate headquarters in Wood River, Illinois.  The contract for the development of the real property on which such headquarters are located was awarded to Winfield Development LLC.  Winfield Development, LLC developed said property for an undisclosed fee.

h.  On August 17, 2007, YTB International, Inc. entered into a lease agreement with lessor Meridian Land Co. to rent approximately 5,500 square feet premises located at #112 Magnolia Drive (Lot #9 Magnolia Commons), Glen Carbon, Illinois.  Rent on this property is $8,400 per month.

i.  Conspiracy Defendants Timothy Kaiser, M.D. and Clay Winfield facilitated, directed and profited from the actions mentioned in subparagraphs (a)-(h) of this paragraph.

j.  CCMP, Inc. designed and manufactured all the marketing materials for YTB Defendants' illegal operations, and was paid no less than $7,000,000.00 for making these materials.  CCMP, Inc. was also paid for creating the 130 foot tall, 50,000 pound replica of the Statue of Liberty used at YTB Defendants' 2008 convention in St. Louis, Missouri.  CCMP, Inc. described this statue, which was approximately 85% of the size of the original statue, as the largest replica of Lady Liberty ever created.  It took 48 semi-tractor trailer trucks to transport this statue to St. Louis, Missouri.  While the actual cost was never disclosed, reports estimate that CCMP, Inc. was paid over $8,000,000.00 for the statue.  YTB Defendants' 2008 convention lasted 5 days.

Doc. 81 at 22-23 ¶ 81.

As should be evident from the portions of Plaintiffs' operative complaint quoted above, the allegations of conspiracy contained in the complaint can hardly be said to lack detail or to be inadequate to furnish the Conspiracy Defendants with sufficient notice of the conduct that is claimed by Plaintiffs to be actionable.  The fact that the actions taken by the Conspiracy Defendants to further the alleged conspiracy are legal acts is of no moment, of course.  "The essence of a conspiracy is not the accomplishment of the unlawful design, but it is the unlawful confederation or agreement to accomplish the criminal or unlawful purpose."  *People v. Cohn*, 193 N.E. 150, 153 (Ill. 1934).  Correspondingly, "[t]he legality of an alleged conspiracy or combination is determined by the intent and purpose of the parties.  Where the conspiracy itself has an unlawful purpose, the means employed, whether themselves criminally or civilly actionable, are immaterial."  11 Illinois Law & Prac. *Conspiracy* § 4 (1956 & Supp. 2009) (footnote omitted) (collecting cases).  *See also Chicago, Wilmington & Vermillion Coal Co. v. People*, 114 Ill. App. 75, 1904 WL 1716, at *15

Page 18 of  24

(Ill. App. Ct. 1904) ("[A]n indictment will lie at common law . . . for a conspiracy to do an act not illegal nor punishable if done by an individual, when done by the conspirators to effect a purpose which has a tendency to prejudice the public[.]").  Here Plaintiffs properly have alleged that the acts of the Conspiracy Defendants enumerated in Plaintiffs' operative complaint were done in furtherance of an unlawful conspiracy to operate a pyramid scheme and to employ a chain referral sales technique, and therefore the Conspiracy Defendants are liable for any injury caused by the acts of the YTB Defendants.  *See Hoffman-La Roche, Inc. v. Greenberg*, 447 F.2d 872, 874 n.2 (7th Cir. 1971) (citing *Schwehr v. Badalamenti*, 143 N.E.2d 558, 561-62 (Ill. App. Ct. 1957)); *Reel v. City of Freeport*, 209 N.E.2d 675, 677-78 (Ill. App. Ct. 1965).

Finally, the Court finds as misplaced Defendants' reliance upon the doctrine of intracorporate immunity as grounds for dismissal of the civil conspiracy claim in this case.  Because a conspiracy requires an agreement among separate persons, the general common-law rule is that a corporation cannot conspire with its own agents and employees.  *See Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04 C 0698, 2005 WL 589000, at *16 (N.D. Ill. Mar.11, 2005); *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 788 N.E.2d 740, 752 (Ill. App. Ct. 2003) (citing *Buckner v. Atlantic Plant Maint., Inc.*, 694 N.E.2d 565, 570 (Ill. 1998)); *Davis v. Times Mirror Magazines, Inc.*, 697 N.E.2d 380, 388 (Ill. App. Ct. 1998).  Here, while it is the case that Kaiser and Winfield, as corporate officers of YTB International, cannot conspire with YTB International, just as Kaiser as a corporate officer of Meridian cannot conspire with Meridian, and Winfield as a corporate officer of Meridian and Winfield LLC cannot conspire with those entities, this is not fatal, obviously, to the civil conspiracy claim in this case.  Also, certain allegations of the complaint suggest that Kaiser and Winfield may have been acting on their own behalf, rather than on behalf of their corporate

principals.  If so, then this takes the civil conspiracy claim out of the scope of the intracorporate immunity doctrine.  *See Tullis v. Wal-Mart Stores, Inc.*, Civil No. 09-935-GPM, 2009 WL 3756640, at *2 n.1 (S.D. Ill. Nov. 9, 2009); *Jamaica Citizens Bank, Ltd. v. North Am. Special Risk Assocs., Inc.*, No. 96 C 4203, 1996 WL 648712, at *5 (N.D. Ill. Nov. 1, 1996); *Bilut v. Northwestern Univ.*, 692 N.E.2d 1327, 1332-33 (Ill. App. Ct. 1998).  The Court concludes that the civil conspiracy claim in the operative complaint in this case withstands dismissal pursuant to Rule 12(b)(6).

## E.    Abstention from the Exercise of Jurisdiction under the CAFA

As a final matter, the Court takes up the question of whether the Court is required to abstain from the exercise of federal subject matter jurisdiction under the CAFA, which, as already has been noted, is the asserted basis for such jurisdiction in this case.  In general, of course, the CAFA grants federal courts subject matter jurisdiction as to class actions, including putative class actions, commenced on or after February 18, 2005, in which claims are asserted on behalf of one hundred or more class members, at least one class member is a citizen of a state different from at least one defendant or, alternatively, at least one class member is a foreign state or a citizen or subject of a foreign state and at least one defendant is a citizen of a state (and vice versa), and the class claims exceed in the aggregate $5 million, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(1)(B), (d)(1)(D), (d)(2), (d)(5)(B), (d)(6), (d)(7), (d)(8); *In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 330 (7th Cir. 2009); *Dintelman v. Kellogg Co.*, Civil No. 09-945-GPM, 2010 WL 520284, at *1 (S.D. Ill. Feb. 12, 2010); *Havron v. AT & T, Inc.*, Civil No. 09-1040-GPM, 2009 WL 5030760, at *1 (S.D. Ill. Dec. 16, 2009); *Willis v. Greenpoint Mortgage Funding, Inc.*, Civil No. 09-593-GPM, 2009 WL 4730957, at *1 (S.D. Ill. Dec. 8, 2009); *Baker v. Acer Am. Corp.*, Civil No. 09-885-GPM, 2009

WL 3681865, at *1 (S.D. Ill. Nov. 3, 2009); *Springman v. AIG Mktg., Inc.*, No. 07-737-GPM, 2007

WL 3406927, at *2 (S.D. Ill. Nov. 14, 2007); *Buller Trucking Co. v. Owner Operator Indep. Driver*

*Risk Retention Group, Inc.*, 461 F. Supp. 2d 768, 772 (S.D. Ill. 2006); *Schillinger v. 360Networks*

*USA, Inc.*, Civil No. 06-138-GPM, 2006 WL 1388876, at *2 (S.D. Ill. May 18, 2006) (quoting

Pub. L. 109-2, § 9, 119 Stat. 4).  This case is a putative class action commenced after the effective

date of the CAFA in which there is minimal diversity of citizenship:  Stull, as discussed, is an Illinois

citizen and CCMP is a corporation incorporated under Indiana law with its principal place of

business in Indiana and therefore is a citizen of Indiana for diversity purposes.  *See* 28 U.S.C.

§ 1332(c)(1); *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981); *Lyerla v. Amco*

*Ins. Co.*, 461 F. Supp. 2d 834, 836 (S.D. Ill. 2006).  *See also Frakes v. B & J Food Serv.*

*Equip. of Mo., Inc.*, Civil No. 10-247-GPM, 2010 WL 1418567, at *2 (S.D. Ill. Apr. 7, 2010) (citing

*Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192-95 (2010)) (the location of a corporation's principal

place of business for diversity purposes is the state where the corporation has its headquarters or

nerve center).  Additionally, the proposed class contains more than one hundred persons, and the

damages sought in this case exceed $5 million, exclusive of interest and costs.  *See* Doc. 81

at 18 ¶ 60, 20 ¶ 71, 21 ¶ 76, 24 ¶ 84.[8]

---

8.   The Court notes that the allegations of the operative complaint in this case concerning the size
of the proposed class and the damages sought contemplate that this case will proceed as a suit on
behalf of a nationwide class, but in this Order, of course, the Court has held that any class-wide
claims in this case under the ICFA may be brought only on behalf of Illinois citizens. The Court is
uncertain about what effect its decision regarding extraterritorial application of the ICFA has on the
size of the proposed class and the damages sought in this case, but it seems reasonable to suppose
that the effect of the decision is to reduce both. However, the Court assumes that it continues to have
subject matter jurisdiction under the CAFA in this case, consistent with "the general principle that
jurisdiction once properly invoked is not lost by developments after a suit is filed[.]" *Cunningham
Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010) (citing *St. Paul Mercury Indem.
Co. v. Red Cab Co.*, 303 U.S. 283, 293-95 (1938)).

Notwithstanding the fact that this case was properly filed in the Court's diversity jurisdiction under the CAFA, as Defendants point out in their brief in support of their motion to dismiss, the effect of the Court's decision to restrict any class certified in this case to Illinois citizens may bring this case within the scope of certain provisions of the CAFA for mandatory abstention from the exercise of federal subject matter jurisdiction under the statute.  In particular, the CAFA provides, "A district court shall decline to exercise jurisdiction . . . over a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B). The so-called "home-state controversy" exception to the exercise of CAFA jurisdiction means that a court must decline jurisdiction if it appears by a preponderance of the evidence that more than two-thirds of the members of a class or a proposed class are citizens of the state where a class action or putative class action was filed and all of the primary defendants are citizens of the forum state. *See In re Sprint Nextel Corp.*, 593 F.3d 669, 671, 673 (7th Cir. 2010); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 677-79 (7th Cir. 2006).  Importantly, the statute provides that a court *shall* abstain in cases where the home-state controversy exception applies.  "As used in statutes . . . this word [shall] is generally imperative or mandatory[.]" *Jefferson v. United States*, 546 F.3d 477, 484 (7th Cir. 2008) (quoting *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661-62 (2007)).  Nevertheless, even where a statute employs mandatory language, a court must avoid a construction of the statute that achieves an absurd result. *See Bartholomew v. United States*, 740 F.2d 526, 531 (7th Cir. 1984) (citing *Ralpho v. Bell*, 569 F.2d 607, 627-28 (D.C. Cir. 1977)). *See also Milwaukee County, Wis. v. Donovan*, 771 F.2d 983, 990 (7th Cir. 1985); *In re National Mills*, 133 F.2d 604, 607-09 (7th Cir. 1943).

The CAFA does not define the term "primary defendants" as it is used in the home-state controversy exception to the statute, but the Court has held in the past that it refers to "those parties that are allegedly directly liable to the plaintiffs, while 'secondary' defendants are . . . those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification." *Kitson v. Bank of Edwardsville*, No. 06-528-GPM, 2006 WL 3392752, at *17 (S.D. Ill. Nov. 22, 2006) (quoting *Passa v. Derderian*, 308 F. Supp. 2d 43, 62 (D.R.I. 2004)). It is not necessary to probe the meaning of the statutory language in detail in this instance, because almost all Defendants in this case are, like Stull and the other members of the proposed class, citizens of Illinois, with the lone exception of CCMP, which, as noted, is a citizen of Indiana. As it appears that this case is one in which more than two-thirds of the proposed class (indeed, all) are citizens of Illinois, where this action was filed, as are all of the primary defendants (e.g., those whose liability is not premised upon conspiracy, such as CCMP), the Court is concerned that, under the CAFA, it is required to abstain from hearing this case. The Court notes that such a result appears to be consistent with the statutory purpose of the CAFA to ensure that interstate controversies, rather than cases which present only controversies localized in a single state, are heard in federal court. *See Sprint*, 593 F.3d at 673 ("CAFA was enacted to ensure that national controversies . . . are decided in federal court."); *Roche v. Country Mut. Ins. Co.*, Civil No. 07-367-GPM, 2007 WL 2003092, at *6 (S.D. Ill. July 6, 2007) (quoting *Mattera v. Clear Channel Commc'ns, Inc.*, No. 06 Civ. 01878(DC), 2006 WL 3316967, at *10 (S.D.N.Y. Nov. 14, 2006)) ("Congress, through enactment of CAFA, sought to encourage federal jurisdiction over interstate class actions."). The Court will direct the parties to submit briefing on the issue of whether mandatory abstention under the CAFA applies in this case.

### III. CONCLUSION

Defendants' motion to dismiss for failure to state a claim upon which relief can be granted (Doc. 121) is **GRANTED in part and DENIED in part**.  The motion is granted with respect to the claims of Plaintiffs Faye Morrison, Kwame Thompson, Jeffrey Hartman, Polly Hartman, JPH, Grace Perry, and Courtney Speed on the grounds that, as non-residents of Illinois, they may not assert claims under the ICFA, and the claims of those Plaintiffs are **DISMISSED with prejudice**.  The motion is **DENIED** with respect to the claims of Plaintiff John Stull for violation of the ICFA and civil conspiracy.  The parties to this case are **ORDERED** to submit briefs of not more than twenty (20) pages in length regarding the issue of whether the Court is required to abstain from hearing this case pursuant to 28 U.S.C. § 1332(d)(4)(B) not later than thirty (30) days from the date of entry of this Order.

**IT IS SO ORDERED.**

DATED:  April 19, 2010

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge